ANDREW ESCHWEILER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Eschweiler v. Commissioner
Docket No. 35119-85
United States Tax Court
T.C. Memo 1989-601; 1989 Tax Ct. Memo LEXIS 594; 58 T.C.M. (CCH) 619; T.C.M. (RIA) 89601; November 1, 1989
Andrew Eschweiler, pro se. Ronald J. Long, for the respondent. COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: By notice of deficiency dated June 14, 1989, respondent determined a deficiency in petitioner's Federal income and self-employment taxes *596 for the taxable year 1984 in the amount of $ 23,659, and additions to tax as follows: Additions to Tax
Sec. 6651(a)(1) [1]
Sec. 6661
Sec. 6653(a)(1)
Sec. 6653(a)(2)
$ 5,915.00
$ 2,366.00
$ 1,183.00
50% of interest
due on $ 23,659.00 Additions to Tax
Additional
Interest
Sec. 6621(c)
$ 5,915.00
120% of interest
due on $ 23,659.00
The issues to be decided are: 1. Whether respondent erred in his determination, by the "source and application of funds" method, that petitioner received the following amounts of income in 1984: a. $ 50,000 posted as a bond on petitioner's behalf in an unrelated criminal proceeding; b. nondeductible living expenses of $ 9,072.20; and c. $ 3,556.00 for cocaine purchases and $ 491.00 for marijuana purchases. 2. Whether petitioner is liable under section 1401 for self-employment tax for 1984. 3. Whether petitioner is liable for additions to tax for 1984 under (a) section *597 6651(a)(1) for failure to file an income tax return for 1984; (b) section 6653(a)(1) and (2) for negligence or intentional disregard of the rules and regulations; and (c) section 6661 for substantial understatement of income tax. As discussed below, we find that petitioner failed to carry his burden of proving that respondent erred in the determination in each of the issues before the Court. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and related exhibits are incorporated herein by this reference. At the time he filed the petition, petitioner resided in Chicago. He was unmarried in 1984. Petitioner was arrested in 1983 and convicted of narcotics trafficking. Almost $ 38,000 in cash was found in his apartment and in his safe deposit box. He had also bought a car in 1983 for which he paid $ 12,342 in cash. In addition, he purchased cocaine and marijuana with a street value of approximately $ 4,000. His drug dealing had involved large quantities of cocaine and marijuana, worth many hundreds of thousands of dollars in street value, and his transactions involved large sums of cash. After petitioner's first arrest, *598 he made frequent trips home to Milwaukee. In April 1984, while he was free pending the outcome of the appeal of his case, petitioner was again arrested for narcotics trafficking. A bail bond was posted by petitioner's brother, Peter, in the required amount of $ 50,000 cash, payable to petitioner when conditions of the bond were met. The Government, suspecting an illegal source of the money, requested a hearing. When a hearing was scheduled to determine the source of the bond funds, Mrs. Joyce Eschweiler, petitioner's mother, put up her home and her daughter's home as additional property bond in lieu of the cash. The $ 50,000 cash bond was the subject of a termination assessment by the Internal Revenue Service (IRS) against petitioner for the taxable year 1984 on August 30, 1984, in the amount of $ 19,387. On August 31, 1984, the IRS filed a Notice of Levy with the Clerk of the Court, U.S. District Court, Northern District of Illinois, with respect to the termination assessment for the taxable year 1984, in the amount of $ 19,387. On March 11, 1985, petitioner's brother changed the designated recipient of the bond proceeds from Andrew Eschweiler to petitioner's mother. *599 On March 29, 1985, the U.S. District Court, Northern District of Illinois, denied petitioner's motion to exonerate bond. The granting of this motion would have resulted in release of the bond proceeds. On January 30, 1986, the U.S. Court of Appeals for the Seventh Circuit affirmed the District Court's denial of the motion to exonerate bond. Petitioner and his mother then brought another suit, this time claiming that the money belonged to his mother. The U.S. District Court, Northern District of Illinois, dismissed Mrs. Eschweiler's claim; denied the Eschweilers' motion for summary judgment; granted in part and denied in part the government's motion to dismiss; and granted the government's motion for summary judgment, finding that the notice of deficiency for the 1984 taxable year was sent to petitioner's last known address. Petitioner and his mother appealed. The U.S. Court of Appeals, Seventh Circuit, reversed the District Court and remanded the case, holding that the government was not entitled to summary judgment on the last known address issue as a matter of law. . Having received no 1984 Federal *600 income tax return from Andrew Eschweiler, the IRS had prepared a substitute return for petitioner, estimating his income by using the "source and application of funds" method. Respondent computed petitioner's income for 1984 by adding the following items: (1) petitioner's estimated minimal nondeductible living expenses for the year (1/2 of the U.S. Bureau of Labor Statistics' consumer expenditure survey and consumer price index for petitioner's region, with only his known rent expenses substituted for the Bureau's figures), in the amount of $ 9,072.20; (2) the street value of the cocaine and marijuana he bought prior to the 1984 arrest, in the amount of $ 4,047; and (3) the $ 50,000 bond. Respondent determined that petitioner's total unreported income was $ 63,119.20 for 1984, and that petitioner owes $ 23,659 in tax plus additions to tax for 1984. Following the period in which the IRS levied the $ 50,000, and throughout the investigation, there is no evidence that petitioner claimed that the money belonged to Mrs. Eschweiler; only the designated payee's name was changed, and this was done 6 months after the levy had been filed. Petitioner did not dispute the estimate of *601 the drugs' street value; in fact, his estimates of their value were higher than those of respondent. OPINION The first issue to be decided is whether petitioner received unreported income in the amount of $ 63,119.20. Gross income includes all income from whatever source derived. Sec. 61; . Where the taxpayer has failed to report on income tax returns amounts of income, the government may employ indirect methods where records are not sufficient to otherwise establish income. . A taxpayer is required to keep sufficient records to enable respondent to determine his correct tax liability. Sec. 6001. In the absence of such records, respondent may compute the taxpayer's income by any method that clearly reflects income. Sec. 446(b); . The sources and application of funds method of reconstructing income (cash expenditures method), an indirect method, has been held to clearly reflect income. ; . *602 It is based on the assumption that the amount by which a taxpayer's application of funds during a taxable period exceeds his reported sources of funds for the same period has, absent some explanation by the taxpayer, taxable origins. ; P-H Memo T.C. par. 71,072 at 318-71. To explain the difference between the application of funds and the sources thereof, the taxpayer may show that he had nontaxable sources of funds, such as cash on hand, gifts, inheritance, loans, etc. ; ; . Proper use of the source and application of funds method of income reconstruction requires that respondent either present evidence of a likely source of currently taxable income or negate nontaxable sources of income and track down relevant leads which might show alternative sources of nontaxable income if such leads are reasonably susceptible to being checked. *603 ; ; ; . "[W]here relevant leads are not forthcoming, the Government is not required to negate every possible source of nontaxable income, a matter peculiarly within the knowledge of * * * [petitioners]." ; ; . Respondent used the source and applications of funds method to determine petitioner's income in this case. At trial, respondent's agent testified credibly as to the leads available as well as likely sources of taxable income and negated nontaxable sources of income. Petitioner was uncooperative with respondent in discovery and trial preparation until trial commenced. We conclude that respondent's use of the source and application of funds method of income reconstruction was proper. A deficiency *604 determined by proper use of this method is presumptively correct, and the burden of proof is upon the taxpayer to demonstrate otherwise. Rule 142(a); . There are three parts to respondent's determination that petitioner received unreported income of $ 63,119.20. The largest component of respondent's determination of unreported income is the $ 50,000 which was posted as a cash bond on petitioner's behalf in the unrelated criminal proceeding. The $ 50,000 cash bond was posted by petitioner's brother, but made payable to petitioner when conditions of the bond were performed. The parties stipulated that the cash did not belong to petitioner's brother. Petitioner's position is that the $ 50,000 used for the cash bond belonged to his mother. We are not so persuaded. We believe petitioner had the ability to and did generate the proceeds used for the cash bond. His own testimony indicates a potential source of annual income in excess of $ 300,000. He also testified that many of his transactions were in cash. He kept a lot of cash. In 1983, cash in the amount of $ 37,930 was found in his safe deposit box. He also *605 paid $ 12,342 in cash for a car in 1983. At trial, petitioner gave unconvincing and contradictory explanations for his possession of illegal drugs and quantities of cash. He claimed that a deceased friend had involved him unawares in his misdeeds and that the drugs belonged to a deceased friend whose girlfriend had asked petitioner to remove them from the deceased man's apartment. He claimed that the cash had come from an insurance payment following a robbery, though he conversely stated he had no insurance. We do not believe that petitioner's mother accumulated the $ 50,000 for the cash bond. At trial, petitioner called his mother, Mrs. Eschweiler, as a witness. Mrs. Eschweiler testified that she had secretly put money aside during her years working as a registered nurse, storing it in large denominations ($ 50's and $ 100's) in a box, of which she said neither her husband nor anyone else but herself knew. According to her testimony the accumulation totalled between $ 50,000 and $ 50,200. Mrs. Eschweiler provided no plausible reason why she would keep such a large sum of cash in her home. Distrust of financial institutions was apparently not a motive because she had bank *606 accounts and savings bonds. Mrs. Eschweiler testified that her income from nursing was approximately $ 9 per hour when she retired. In 1984 petitioner's parents, Mr. and Mrs. Eschweiler, reported a joint accumulated gross income of $ 17,696. Mrs. Eschweiler said she had saved cash at the rate of $ 25 to $ 40 per week (which leaves aside the question of how it was in $ 50 and $ 100 bills). That would yield up to about $ 2,000 per year, a rate which would require 25 years to total $ 50,000. Mrs. Eschweiler testified in an unconvincing manner. She testified at one point that she did not know how much her husband earned and had never seen his tax returns. She also testified that she personally handled the family finances and had signed their tax returns every year. Petitioner offered no other proof or documentation to support his mother's claims. Taking into account the entire record, we conclude that petitioner has not met his burden of proving that respondent's determination that the $ 50,000 used for the cash bond came from petitioner rather than his mother was in error. The second component of respondent's determination of unreported income is petitioner's non-deductible *607 cost of living expenses for 1984 of $ 9,072.20, all of which is includible in taxable income for 1984. Respondent's adjustment to income for estimated living costs of $ 9,072.20 was derived from the U.S. Bureau of Labor Statistics, Consumer Expenditure Survey: Integrated Survey Data for Metropolitan Areas, 1972-73. Total Expenditures and Income Classified by Family Characteristics Volume V - Chicago, Cincinnati, Cleveland, Detroit, Milwaukee, Minneapolis-St. Paul and the Consumer Price Index, U.S. City Average. We find that respondent employed a reasonable method of determining living expenses for 1984 in light of the complete absence of any records or other documents to support petitioner's claims of lesser living costs. The statutory notice of deficiency detailed each component which totalled $ 9,072.20. Petitioner argued that he lived cheaply and that he had not spent anywhere near $ 9,000 on his living expenses, but offered no evidence to support this claim. He testified that he had split the rent with another person for a portion of the time, though that practice was expressly forbidden in his lease, and he had told an FBI agent that he was the sole occupant. We conclude *608 that petitioner has failed to carry his burden of proving respondent's determination of living costs to be incorrect. The third component of respondent's determination of unreported income is the inclusion of amounts paid by petitioner for marijuana ($ 491) and cocaine ($ 3,556). We have previously upheld respondent's inclusion of cocaine purchases in taxable income. E.g., . When petitioner was arrested for drug trafficking in 1984, he had quantities of marijuana (111,787 grams) and cocaine (5645 grams) in his possession. Respondent conservatively estimated the purchase price of marijuana to be $ .44 per gram (or $ 12.47 per ounce) and cocaine to be $ 63 per gram based upon estimates provided to respondent by the Drug Enforcement Administration. Indeed, petitioner's own testimony as to the value of cocaine and marijuana during that period was $ 100 per gram of cocaine and $ 50 per ounce of marijuana. Petitioner has failed to carry his burden of proof as to the third component of respondent's determination of unreported income. Accordingly, we find that the purchase price of marijuana and cocaine in *609 petitioner's possession in 1984 were properly included by respondent as taxable income. Self-Employment Tax
A self-employment tax is imposed on income earned from self-employment. Sec. 1401. We have upheld the self-employment tax on income from drug trafficking, where the evidence of such income was a cash bond and respondent's estimates of living expenses. . The record in this case clearly reflects petitioner's drug trafficking activities during 1984. Petitioner provided no persuasive evidence showing error in respondent's determination as to this issue. Thus, as in Kelly, we find petitioner is subject to self-employment tax. Additions to Tax
Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1). This section imposes an addition to tax for failure to timely file a Federal income tax return for 1984. Petitioner provided no evidence to rebut respondent's determination that a timely return was not filed. Accordingly, we sustain respondent's determination that petitioner is liable for an addition to tax under section 6651(a)(1). Respondent also determined *610 that petitioner is liable for additions to tax under section 6653(a)(1) and (2). This section provides for additions to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations. An underpayment is defined to be the amount of tax imposed if a return was not filed on or before the last day prescribed for filing such return. Sec. 301.6653-1(c)(1)(ii), Proced. and Admin. Regs. Petitioner did not file a return for 1984. We believe that petitioner knew of the requirement for him to file an income tax return for the year at issue. We find that his underpayment is due to intentional disregard of rules and regulations. Consequently, we find that petitioner is liable for additions to tax under sections 6653(a)(1) and (2). Respondent also determined that petitioner is liable for the addition to income tax imposed under section 6661 at the rate of 10 percent. Section 6661 provides that an addition to tax is applicable where there is a substantial underpayment of income tax. Petitioner presented no evidence to carry his burden of proving respondent's determination as to this issue erroneous. Accordingly, we hold that petitioner is *611 liable for the addition to tax under section 6661. The Omnibus Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002(a), 100 Stat. 1874, 1951, increased the section 6661(a) addition to tax to 25 percent of the underpayment attributable to a substantial understatement for additions to tax assessed after October 21, 1986. Respondent, however, has not amended the answer to seek an increase to the section 6661(a) addition to tax over the amount determined in the notice of deficiency. Accordingly, we sustain respondent's determination as set forth in the notice of deficiency. On brief respondent conceded the issue on whether the increased interest rate under section 6621(c) applies in this case. To reflect the foregoing and concessions by respondent, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year at issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩